

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTREPID Paralegal Solutions LLC

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

PhiliP ZiPERMAN
ANTHONY BROWN

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. BAH 24CV1554

*(to be filled in by the Clerk's Office)*

Jury Trial: ☒ Yes ☐ No
*(check one)*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| INTREPID PARALEGAL SOLUTIONS, LLC | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Case No. _BAH 24CV1554_ |
| | * | |
| PHILIP ZIPERMAN, in his official capacity | * | |
| as Deputy Counsel for the Attorney | * | |
| General of the State of Maryland | * | |
| | * | |
| and | * | |
| | * | |
| ANTHONY BROWN in his official capacity | * | |
| as Attorney General of the State of Maryland | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# COMPLAINT FOR VIOLATION OF RIGHTS

## I.    The Parties to This Complaint

### A.    The Plaintiff

INTREPID PARALEGAL SOLUTIONS, LLC
12410 Milestone Center Dr Suite 600
Germantown, MD 20876
(443) 281-9100
Dmanoff@ipsvirtual.com

1

**B.    The Defendants**

PHILIP ZIPERMAN
Office of the Attorney General
Consumer Protection Division
200 St Paul St,
Baltimore, MD 21202
410 576-6417;
pziperman@oag.state.md.us

Maryland Attorney General
Anthony Brown
200 St. Paul Place
Baltimore, MD 21202
410-576-6300
abrown@oag.state

## II.    Basis for Jurisdiction

1. This action arises under the United States Constitution, particularly the First, Fourth, and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. 1983, 42 U.S.C. 1988, 18 U.S.C. § 241, 18 U.S.C. § 241, and 28 U.S.C. § 2201

2. This Court is vested with original jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

3. This Court is vested with authority to grant the requested declaratory judgment by operation of 28 U.S.C. §§ 2201 and 2202, and pursuant to Federal Rule of Civil Procedure 57.

4. This Court is authorized to issue the requested injunctive relief pursuant to 42 U.S.C. §1983, 28 U.S.C. § 1331, 28 U.S.C. § 1332, and Federal Rule of Civil Procedure 65.

5. This Court is authorized to award the requested damages pursuant to 28 U.S.C. § 1343.

6. Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1391(b), in that the events giving rise to the claim occurred within the district.

III.  **Statement of Claim**

The Plaintiff is seeking an injunction and damages incurred by the constant harassment by the Defendant in his role as Deputy Counsel of the Maryland Office of the Attorney General and his interference in the free exercise of the Plaintiff's business as a provider of paralegal services.

The Defendant initially requested information about the Plaintiff's paralegal services without any statement of cause nor providing any reason. The Plaintiff responded to the Defendant's inquiries in good faith.

At no time did the Defendant indicate that anything was amiss but proceeded to subpoena further information. No civil or criminal charges were presented by the Maryland Office of the Attorney General to the Plaintiff.

After receiving digital information from the Plaintiff, the Defendant demanded paper copies of the same information. The Defendant increased the harassment by bringing the weight of the Maryland Office of the Attorney General on to the Plaintiff without any charges or complaints. At that time the Plaintiff sought legal advice.  When presented with

3

requests from an attorney on behalf of the Plaintiff, the Defendant still did not provide reason or written charges of any wrongdoing on the part of the Plaintiff.

The Defendant attempted to serve the Plaintiff with subpoenas at the wrong address or upon wrong individuals, but never at the corporate address which is prominently posted on the internet, letterheads and the State of Maryland Department of Assessments and Taxation (SDAT).

The Defendant then brought suit to enforce the subpoena in the Circuit Court for Carroll County in Maryland, but again, no criminal or civil charges were presented by the Defendant.

The Defendant engaged in a campaign of harassment by contacting clients of the Plaintiff and alleged that the Plaintiff was engaged in the unauthorized practice of law (UPL) which is illegal in the State of Maryland. Never has the Plaintiff been cited nor charged with UPL by any authority, the Office of the Attorney General, or the Defendant.

The Defendant has indicated they need more information and records from the Defendant to prepare a case. Never has the Defendant indicated that there was wrongdoing on the part of the Plaintiff nor any complaints against the Plaintiff by any clients.

The Defendant's interference with the free practice of the Plaintiff's business has not only adversely affected the attorneys and paralegals that work with Intrepid Paralegal Solutions but has deprived citizens of much-needed services. The continued harassment by the Defendant has affected the good name and reputation of the attorneys and paralegals of Intrepid Paralegal Solutions and has resulted in mounting legal fees to address undefined and unstated charges of the Defendant.

4

## IV.   LEGAL PRECEDENT

### CAUSE OF ACTION
### COUNT I
### 42 U.S.C. § 1983 – First Amendment
### (Plaintiffs' Right to Provide Legal Information)

Plaintiffs' providing legal information regarding court-created forms is pure speech, not a form of occupational conduct of which speech is only an incidental part.

Plaintiffs are not challenging the application of the State of Maryland's UPL laws to speech having an independent legal effect, such as acting as an attorney with the authority to make legally binding admissions, render advice or decisions, or create legally binding obligations for another party.

The First Amendment's Free Speech Clause fully protects Plaintiff's oral and written legal information regarding Maryland's court-created forms.

Any interest the state has could be adequately served by less-speech-restrictive alternatives.

The Defendant cannot demonstrate that the Plaintiff has represented that they are attorneys, nor has the Plaintiff dispensed legal advice. The Defendant has refused to acknowledge that the Plaintiff has instituted several measures to regulate paralegals to prevent the unauthorized practice of law.   That Defendant has not presented any plausible regulatory alternatives that would benefit the under-represented and/or the unrepresented litigants of the state of Maryland.

5

Defendant's enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiffs' speech rights cannot withstand any level of First Amendment scrutiny.

Commercial speech, which serves individual and societal interests in assuring informed and reliable decision making, is entitled to some First Amendment protection, Virginia Pharmacy Board v. Virginia Consumer Council, 425 U. S. 748, a (Virginia Board of Pharmacy v. Virginia Consumer Council, 425 U.S. 748 (1976).

Advertising, the traditional mechanism in a free market economy for a supplier to inform a potential purchaser of the availability and terms of exchange, may well benefit the administration of justice…. On this record, appellants' advertisement (contrary to appellee's contention) is not misleading, and falls within the scope of First Amendment protection. (Bates v. State Bar of Arizona, 433 U.S. 350 375-377 (1977).

The First Amendment's protection of Free Speech protects Plaintiffs' activity against the application of New York's UPL rules because the government "generally has no power to restrict expression"—or the hearing of that expression—"because of its message, its ideas, its subject matter, or its content." Barr v. American Assn. of Political Consultants, Inc., 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (quoting Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972)) (internal quotation marks omitted).

Maryland's UPL rules, as applied to Plaintiff by the Defendant, punish the Plaintiff's truthful, and non-misleading speech on the basis of its content thereby hindering and denying State of Maryland policies of providing equal access to justice for all individuals.

Maryland's UPL rules, as applied by the Defendant to the Plaintiff, cannot satisfy strict scrutiny because they are not narrowly tailored to a compelling

government interest. Nor can they satisfy any lesser level of scrutiny that might apply. To the contrary, the Plaintiffs' carefully designed program to provide reliable, truthful, and non-misleading legal information and services to self-represented citizens of the State of Maryland advances the State's interests in consumer protection and preserving the integrity of the legal system that underlies the UPL rules.

In implementing and enforcing the UPL rules against Plaintiff, the Defendant is, under color of state law, depriving Plaintiffs of their constitutional rights.

## CAUSE OF ACTION
## COUNT II
## 42 U.S.C. § 1983 – Fifth and Fourteenth Amendments
## (Plaintiffs' Right to Due Process)

There are a number of issues in this matter that are ill-defined by the actions of the Defendant. The Defendant initiated an investigation against the Plaintiff without any indication of the goals of such an investigation nor any notification of charges. Defendant has continuously required Plaintiff to provide records and "evidence," both business and personal while refusing to provide any charges or purpose of said investigation. The actions and rationale of the Defendant remain shrouded in uncertainty.

The Defendant has denied the Plaintiff the opportunity to properly prepare any cogent response or defense to the ongoing investigation. The Defendant's actions of not presenting any statement of charges have effectively abrogated the Plaintiff's Fifth and Fourteenth Amendment protections against self-incrimination.

The Plaintiff is protected by the United States Fifth and Fourteenth Amendments, which require the government to follow due process of law

7

and include protections for citizens against self-incrimination and double jeopardy. The Supreme Court held that the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him or her not to answer official questions put to him or her in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." (Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).

The right to due process of law has been recognized since 1215 when clause 39 of the Magna Carta was adopted. Historically, the right protected people accused of crimes from being imprisoned without fair procedures (like indictments and trials, where they would have an opportunity to confront their accusers). The right to due process has grown in two directions: It affords individuals a right to a fair process (known as procedural due process) and a right to enjoy certain fundamental liberties without governmental interference (known as substantive due process).

Procedural due process limits state and federal power by requiring certain procedures to be followed in both criminal and civil matters. If there is a problem with the procedures used to collect evidence or with the methods used to secure a conviction, you can argue that your procedural due process rights were violated. This can lead to the exclusion of evidence from being used in court proceedings if it was collected illegally and to the overturning of an unjust conviction.

Substantive due process is based on the premise that the Constitution protects the public from unwarranted government intrusion infringing upon their fundamental rights.

The Defendant has hinted that the Plaintiff is engaged in unlicensed practice of law (UPL) but has never made any charges to this effect. The Defendant,

8

as a representative of the Maryland state government, has failed to recognize and has ignored state policies.

One of the two components of the Fourteenth Amendment's due process clause is procedural due process. Put simply, procedural due process is the requirement that an affected party have some kind of notice and an opportunity to be heard before a governmental decision is made against him or her. (See Mathews v. Eldridge, 424 U.S. 319 (1976).

The actions of the Defendant in not presenting a clear and easily understood list of charges or violations of Maryland law disadvantages the Plaitiff's ability to properly address the claims of the Defendant. In order to fulfill notice requirements, constitutional due process requires only that parties be informed in a matter reasonably calculated to apprise them of the pending action and provide an opportunity to respond; that is, there are no requirements that notice be given in a specific manner at a specific time and in a specific form. See Rector v. City and County of Denver, 348 F.3d 935 (10th Cir. 2003)

The Defendant, under color of state law, has harassed and impinged on the Plaintiff's daily operations without a clear statement of intent or charges, thereby preventing the Plaintiff from providing legal information and paralegal services to a disadvantaged population. The continued actions of the Defendant are contrary to the established policies and intent of the Maryland judiciary in providing equal access to justice for all individuals.

Maryland courts recognize the increasing participation of self-represented litigants, particularly in family law matters. Although some litigants decline the opportunity to retain qualified counsel, the overwhelming majority of self-represented litigants are constrained from obtaining legal representation by economic, language, or other barriers. It is this latter group that Maryland courts seek to assist. (Best Practices for Programs to Assist Self-

9

Represented Litigants in Family Law Matters distributed by the Administrative Office of the Courts Maryland Judicial Center)

The Maryland Judiciary is committed to providing equal access to justice for all individuals. This commitment is reflected in the Judiciary's adoption of both national and state standards for trial courts. The Maryland Judiciary has embraced the Trial Court Performance Standards as a measure of court performance. Developed in 1989 by a national commission of judges and court administrators chaired by Maryland's then-Chief Judge Robert C. Murphy, these standards guide the Maryland courts and courts nationwide by articulating values, goals, and measures by which courts can evaluate their effectiveness. The Maryland Circuit Court Family Divisions and Family Services Programs have likewise embraced them by developing a set of Performance Standards and Measures for Maryland's Family Divisions that are specifically based on those standards. Both sets of standards are built around five key performance areas:

- Access to justice
- Expedition and timeliness
- Equality, fairness, and integrity
- Independence and accountability
- Public trust and confidence.

In Maryland there are a number of organizations that can provide legal information to help you represent yourself and help with forms to file. Legal services may include help completing forms, answering questions about legal problems, and preparing for your day in court. (The People's Law Library)

Defining the "practice of law," however, is an elusive endeavor. The term "practice of law," as we have already acknowledged, has, in the past, been

10

defined by this Court in a variety of ways. (Abrams v. Lamone, 398 Md. 146, 919 A.2d 1223 (Md. 2007)

The Plaintiff, Intrepid Paralegal Solutions, LLC does not represent they are attorneys and does not offer legal advice or counsel. Supervisory attorneys, along with paralegals, offer support as mechanics of the law following the explicit direction of the client.

The Plaintiff provides legal information, just as do the courts and several other organizations and agencies throughout the State of Maryland.

That the Defendant's actions are arbitrary and capricious and are contrary to the policies concerning access to justice in the State of Maryland.

## CAUSE OF ACTION
### COUNT III
### 42 U.S.C. § 1983 – Fifth Amendments
### (Plaintiff's Protection Against Self-incrimination)

The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. The Fifth Amendment's protection "applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States,* 425 U. S. 391, 425 U. S. 408 (1976); *see Doe v. United States,* 487 U. S. 201, 487 U. S. 207, 487 U. S. 209-210, n. 8 (1988) (*Doe II*); *Schmerber v. California,* 384 U. S. 757, 384 U. S. 761 (1966) ("[T]he privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature").

The Defendant has made demands for the production of documents in investigating the Plaintiff for undisclosed violations. The Defendant has not

11

provided a rationale for Defendant's demands nor has the Defendant produced and "charges" to the Plaintiff. The Defendant has never advised the Plaintiff of their rights akin to  Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The production of documents and the protection against self-incrimination has long been recognized as a crucial legal concept. Such a meaning of "witness" is consistent with, and may help explain, the history and framing of the Fifth Amendment. The 18th-century common-law privilege against self-incrimination protected against the compelled production of incriminating physical evidence such as papers and documents. See Morgan, The Privilege against Self-Incrimination, 34 Minn. L. Rev. 1, 34 (1949); Nagareda, supra, at 1618—1623. Several 18th century cases explicitly recognized such a self-incrimination privilege. See Roe v. Harvey, 4 Burr. 2484, 2489, 98 Eng. Rep. 302, 305 (K. B. 1769); King v. Purnell, 1 Black. 37, 42, 96 Eng. Rep. 20, 23 (K. B. 1748); King v. Cornelius, 2 Str. 1210, 1211, 93 Eng. Rep. 1133, 1134 (K. B. 1744); Queen v. Mead, 2 LD. Raym. 927, 92 Eng. Rep. 119 (K. B. 1703); King v. Worsenham, 1 LD. Raym. 705, 91 Eng. Rep. 1370 (K. B. 1701). And this Court has noted that, for generations before the framing, "one cardinal rule of the court of chancery [wa]s never to decree a discovery which might tend to convict the party of a crime." Boyd v. United States, 116 U.S. 616, 631 (1886). See also Counselman v. Hitchcock, 142 U.S. 547, 563—564 (1892) ("It is an ancient principle of the law of evidence, that a witness shall not be compelled, in any proceeding, to make disclosures or to give testimony which will tend to criminate him or subject him to fines, penalties or forfeitures").

Courts further addressed the production of documents and records in King v. Purnell, 1 Black. 37, 96 Eng. Rep. 20 (K. B. 1748), the phrase "furnish evidence" is repeatedly used to refer to the compelled production of books, records, and archives in response to a government request. Id., at 40, 41, 42, 96 Eng. Rep., at 21, 22, 23. See also, e.g., King v. Cornelius, 2 Str. 1210,

1211, 93 Eng. Rep. 1133, 1134 (K. B. 1744) (compelling discovery of books "is in effect obliging a defendant … to furnish evidence against himself"); 1 T. Cunningham, New and Complete Law-Dictionary (2d ed. 1771) (evidence "signifies generally all proof, be it testimony of men, records or writings"); 1 G. Jacob, The Law-Dictionary (T. Tomlins ed. 1797) (defining "evidence" as "[p]roof by testimony of witnesses, on oath; or by writings or records").

This Court has not always taken the approach to the Fifth Amendment that we follow today. The first case interpreting the Self-Incrimination Clause–Boyd v. United States–was decided, though not explicitly, in accordance with the understanding that "witness" means one who gives evidence. In Boyd, this Court unanimously held that the Fifth Amendment protects a defendant against compelled production of books and papers. 116 U.S. 616, 634—635 (1886); id., at 638—639 (Miller, J., concurring in judgment). And the Court linked its interpretation of the Fifth Amendment to the common-law understanding of the self-incrimination privilege. Id., at 631—632.

The demands of the Defendant as a state government entity to produce documents and records absent a stated purpose only to "review" and decide at a later date to file an action for violations is a request that the Plaintiff provide self-incriminating evidence. The Supreme Court held that "the government may make no evidentiary use of the act of production in proceeding individually against the corporate custodian". (Braswell v. United States, 487 U.S. 99 (1988). The Fifth Amendment's protection may nonetheless be implicated because the act of complying with the government's demand testifies to the existence, possession, or authenticity of the things produced. *See Doe II, supra,* 487 U.S. at 487 U. S. 209; *Doe I, supra,* 465 U.S. at 465 U. S. 612-614, and n. 13; *Fisher, supra,* 425 U.S. at 425 U. S. 410-413.

13

That absent a statement of charges and an advisement of rights or stated cause, the Defendant as an entity of the state government can not demand self-incriminating evidence from the Plaintiff.

## V.     REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

A. A declaration that Defendant's enforcement of the State of Maryland's Unauthorized Practice of Law statutes and regulations violates the First Amendment as applied to Plaintiff's providing legal information regarding court-created forms and procedures and

B. A permanent injunction enjoining future enforcement of Maryland's Unauthorized Practice of Law statutes and regulations as applied to the Plaintiff's providing legal information regarding court-created forms and procedures and

C. That the State of Maryland governmental and judicial entities cooperate with the Plaintiff to develop a regulatory framework for paralegals and

D. Any other relief that the Court deems appropriate.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint is not being presented for an improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation and is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that failing to keep the current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted this 29th day of May, 2024.

Daniel Manoff

obo Intrepid Paralegal Solutions, LLC

Plaintiff, Pro se

1213 Liberty Road Suite J #143

Eldersburg, Maryland 21784

202 999 9412

DManoff@ipsvirtual.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I mailed via first class, postage paid, a copy of the foregoing Complaint for Violation of Rights on May 29, 2024 to:

Office of the Attorney General          Maryland Attorney General
Consumer Protection Division            Anthony Brown
ATTN: Philip Ziperman                   200 St. Paul Place
200 St Paul St                          Baltimore, MD 21202
Baltimore, MD 21202

Daniel Manoff
obo Intrepid Paralegal Solutions, LLC
1213 Liberty Road Suite J #143
Eldersburg, Maryland 21784
202 999 9412
DManoff@ipsvirtual.com